## Case No. 10,736.

### PARKER v. HATFIELD.

[4 McLean, 61; [1] 1 Fish. Pat. Rep. 94; 42 Jour. Fr. Inst. 319.]

Circuit Court, D. Ohio.    July Term, 1845.

PATENTS—INFRINGEMENT—CONFLICTING EVIDENCE—TRIAL BY JURY—REFERENCE.

1. When the evidence on a bill to enjoin the defendant from infringing the plaintiff's patent, be conflicting, the court will direct an issue to be tried by a jury, or refer the matter to a master, to examine the machinery of the defendant, take additional testimony and report.

2. A reference being made, and a favorable report for the plaintiff on all the points controverted being made, an injunction was granted.

[2] [This was a suit in equity [by Zebulon Parker] to restrain the defendant [William Hatfield] from infringement of letters patent for "a new and useful improvement in the application of hydraulic power," viz. a percussion and reaction water wheel, granted to said Zebulon Parker and Austin Parker October 19, 1829. Austin Parker having deceased, the entire interest in the patent became, by assignment from Austin's administrators, vested in Zebulon Parker, the complainant. The invention of Zebulon Parker and Austin Parker, as secured by the said patent, is sufficiently described in the report of the master.

[The opening clause of the specification of this patent, together with the claims thereof, are as follows: "To All to Whom These Presents shall Come: Be it known that one Zebulon Parker and Austin Parker, of the county of Coshocton and state of Ohio, have invented a new and useful improvement in the application of hydraulic power by methods of combining percussion with the reaction, applied and exemplified in: (1) A compound vertical percussion and reaction water wheel for sawmills and other purposes, with the method of applying the water on the same. (2) An improved horizontal reaction water wheel, with the method of combining percussion with reaction on it. (3) A method of combining percussion with reaction on common reaction wheels, or those already in use." The claims were as follows, viz.: "(1) The compound vertical percussion and reaction wheel for said mills and other purposes, with two, four, six, or more wheels on one horizontal shaft; the concentric cylinder involving the shaft, with the manner of supporting them; the spouts which conduct the water into the wheels from the penstock, with their spiral terminations between the cylinders. (2) The improvement in the reaction wheel, by making the buckets as thin at both ends as they can safely be made, and the rim no wider than sufficient to cover them; the inner concentric cylinder; the spout that directs the water into the

---

[1] [Reported by Hon. John McLean, Circuit Justice.]
[2] [From 1 Fish. Pat. Rep. 94.]

wheel; and the spiral termination of the spout between the cylinders. (3) The rim and blocks or planks that form the apertures into the wheel, and the manner of forming the apertures; the conical covering on the blocks, with cylinder or box in which the shaft runs, and the hollow or boxgate in any form, either cylindrical, square, rectangular, or irregular."

[It appeared that letters patent had been granted to the defendant, William Hatfield, December 31, 1838, the specification whereof was as follows: "The schedule referred to in these letters patent, and making part of the same: Be it known that I, William Hatfield, of Zanesville, in the county of Muskingum and state of Ohio, have invented a new and useful improvement on Parker's percussion and reaction water wheel, which is described as follows, reference being had to the annexed drawings of the same, making part of this specification. The main features of this improvement consist in the peculiar shape of the buckets of the wheels, and the arrangement of the double scroll for directing the water upon said buckets in such a manner, both above and below the axis of the shaft, as to produce the greatest effect with the least quantity of water. The wheels, A, A, are arranged in pairs on a horizontal shaft, B, lying across the boxing of the mill and covered by the wheel chamber, C. Between each pair of wheels is arranged a double spiral scroll block, D, for directing the water on the buckets to the right and left, as well as above and below the shaft at the same time. Each wheel is composed of a round, solid head, fastened on the shaft near the end thereof, having a curved rim around the peripheries of said heads, divided into

equal spaces or sections, each of which containing a bucket, E, of the required shape, which is that of a section of an oval, the convexity being on the outside, and the concavity on the inside. It very nearly resembles the bowl of a tablespoon with the handle and part of the large end cut off. The wheel, when made of wood, is strengthened by

[Drawings of patent granted to Z. and A. Parker, October 19, 1829, published from the records of the United States patent office.]

[Drawings of patent granted December 31, 1838, to William Hatfield, published from the records of the United States patent office.]

bands of iron, F, around the peripheries or edges, and across the ends of the buckets. Both wheels are made alike, and are fastened on the horizontal shaft in the vertical position, with their open sides towards the center or towards the scroll. The double spiral scroll D, bears some resemblance to two volutes brought together, and secured in that position. The drawing, Fig. 4, illustrates fully the peculiar form of said double scroll. The boxing, C, and the side decks, H, are also made in the usual manner. The concave, I, in which the scroll is placed, is made something after the shape of an ogee; the convex part over which the water passes to the buckets being raised much higher than in any other wheels for the purpose of directing the water with greater force against the buckets above the axis of the shaft, and conducting the same around the buckets above the axis. The scroll commences to scroll at the small end in front, on either side, and thus continues to increase until it performs a complete revolution around the shaft for the purpose of directing the water as before described. The cup, I, is made in the usual manner. The gate is raised by the attendant by means of a lever or other contrivance. The water enters the shute and passes on at either side of the double spiral scroll block to the buckets of the two wheels at the same time, thus dividing the water, and directing it to the buckets above and below its axis on the wheel at the same time. The invention claimed, and desired to be secured by letters patent, consists in the peculiar form of the buckets, and the double spiral scroll placed between them for directing the water in the manner above described."

[The bill prayed for an injunction to restrain said Hatfield in the use of his pretended invention, and claimed that said alleged improvement was not new and useful, but was a direct infringement of the rights of the plaintiff, and further charged the defendant with confederating with parties unknown, and prayed for a discovery and answer from the defendant describing his alleged improvement, and why it was an improvement.

[The defendant in his answer cited in defense his letters patent of December 31. 1838, and stated that, being ignorant, he had to employ one Elliot at Washington to write it for him, and though he believes his invention to be new and useful, he admits that said Elliot, in naming his (defendant's) invention, styled it an improvement on Parker's, but trusted he would not be prejudiced thereby if he showed his improved water wheel to be wholly independent of and superior to complainant's. Further, that the combination of percussion and reaction in the use of water power, as claimed in plaintiff's letters patent, cannot exist to any useful extent together; that the defendant claims no advantage of percussion in his water wheel, but simply the power acquired by the weight of a body of water producing action, and the consequent power derived from the reaction of the water escaping through the issues of the wheel. Defendant further claimed: First. That by the peculiar form of his buckets he acquired a force similar to that exerted upon the board of a boat crossing a stream by the force of the current. Secondly. That he did not seek, as the plaintiff did, to produce a vortex, and hence claimed no centrifugal force from that source. Third. That complainant's wheels were, by his specification, hung in front of the lower part of the breast, about a foot from it; that defendant's wheel was placed inside the forebay. Fourth. Complainant conducted the water to the wheel by spouts, while the defendant did not use spouts. Fifth. Complainant used a hollow gate, while defendant used the common gate, which lets the water upon the wheel in a solid body. Sixth. Complainant used a chamber 20 inches high in the forebay, to produce (defendant supposes) the vortex claimed by complainant as an improvement, and that defendant had no such chamber. Defendant claimed that the specifications of complainant's patent were not full, true, or exact, and were therefore void. Defendant denied infringement generally.

[The complainant afterward filed a supplemental bill, which, among other things, set forth other letters patent for improvement in percussion and reaction water wheels, granted to Zebulon Parker and Robert McKelvey, administrator of Austin Parker, deceased, June 27, 1840, and alleged that defendant infringed this patent by making the boxes or draft mentioned therein.

[The claims and that part of the specification of the patent of Parker and McKelvey, which appertains to the present case, are as follows: "To All Whom it may Concern: Be it known that I, Zebulon Parker, of Newark, in the county of Licking and state of Ohio, did, in conjunction with the late Austin Parker, deceased, make certain improvements in the percussion and reaction water wheel, for which letters patent of the United States were granted to Zebulon and Austin Parker, under date of October 19, 1829, and it is hereby declared that the following is a full and exact description of said improvement: The percussion and reaction of wheel or wheels, whether on a horizontal or a vertical axis or shaft, is inclosed in a box or case, which is denominated a draft, which draft is made air and water tight at the top and sides, but is without a bottom, the mouth of said draft dipping into the water; and being, whenever the mill is running, below the level of the water in the tail race, it might be supposed that this air would interfere with their being filled with water, but such, in fact, is not the case, as from the agitation produced by the passing of the water from

the wheels into the drafts, the air is intermingled therewith, and is speedily carried out with it, leaving the draft entirely filled with water. By this arrangement of the wheels within the drafts, they may be placed at a greater elevation than upon any other known plan, while, at the same time, the pressure of draft of the water below them will have the same effect upon them as it would if situated above them and acting in the ordinary manner of head water. What is claimed as new in the above-described improvement on the percussion and reaction wheel, as originally patented by Z. and A. Parker, is the placing of said wheel or wheels, or of wheels analogous thereto in the construction and mode of operation, within air or water tight cases or boxes, herein denominated drafts, substantially in the manner and for the purposes above set forth."

[The court referred the case to C. P. Buckingham, special master commissioner. The questions submitted to the master for examination are stated in his report, which was as follows:

["That, from the pleadings, exhibits, and testimony on file in said cause," he found "that, on October 19, 1829, a patent was issued to Zebulon and Austin Parker, for 'an improvement in the application of hydraulic power,' which improvement consists, according to the specification of the patent: (1) In placing several wheels (always an even number) on one shaft, and conducting the water to them through spouts which wind between concentric cylinders, producing thereby a whirling or vortical motion of the water in the same direction with that of the wheels. (2) In a contrivance for introducing the water into a single horizontal wheel, with a similar motion, together with an improvement in the construction of the wheel itself. (3) In a contrivance for applying the same principle to common wheels now in use. At a subsequent period, Austin Parker died, and his administrator, Robert McKelvey, conveyed to Zebulon Parker all his interest in the invention and subsequent improvements by deed dated November 2, 1839. On October 4, 1843, the patent was extended to the term of 21 years from its original date, upon the petition of Zebulon Parker. On December 31, 1838, William Hatfield obtained a patent for an improvement on Parker's percussion and reaction wheel, consisting, according to the specification, of the peculiar form of the buckets, and the double spiral scroll placed between them for directing the water. In his answer to the bill filed against him by the complainant, the defendant claims that his invention was denominated 'an improvement on Parker percussion and reaction wheel,' by mistake, and that the wheel for which he obtained his patent was wholly his own invention.

["The first question asked by the court in the order is, 'whether the invention claimed by the complainant was new and useful, and, should he so find, that he (the commissioner) then report the particular in which it was new, and wherein consists its utility.' The invention claimed by the complainant consists of several parts or particulars. Each of these will be examined separately. The first particular is the arrangement of several wheels upon the same horizontal shaft. There is nothing in the evidence to show that this invention was not new. The only evidence on this part of the subject is that of Isaac Dillon, who is uncertain whether the wheels which he heard of as being used by George Girty, at Dresden, on one shaft, were prior to the use of Parker's wheel or not. Next, as to its utility. The word 'useful,' as applied to an invention, does not necessarily imply an improvement upon all former methods of obtaining the same end. The office of the government in granting a patent is that of protection. The character of the invention is the only thing which the government is to look to in reference to the public interest, and it is in reference to this alone that the word 'useful' is applied in the patent. It simply means a capability of being applied to a beneficial purpose, and is opposed to that which is mischievous and injurious in its natural tendency. See opinion of Story, J., in Bedford v. Hunt [Case No. 1,217], and in Whittemore v. Cutter [Id. 17,600]. In this sense, then, the invention is certainly useful, inasmuch as it is not pretended that it has in any sense a mischievous effect upon the public. The particulars in which this part of the invention is claimed to be new are the position of the shaft (being horizontal), and the number of wheels attached thereto. Its utility consists in the convenience of attaching the shaft directly to the saw without the intervention of gearing, in avoiding friction by placing the wheels in pairs so that the water shall press equally in each way in a direction parallel with the shaft, and in permitting the power of a lower head as applied to the same shaft to be increased to the utmost extent of the supply of water by increasing the number of pairs of wheels. The next particular of the invention claimed by the complainant, to which the first question of the court will be applied, consists of the concentric cylinders and the manner of supporting them. No evidence has been adduced to show that this part of the invention is not new, nor can there be a doubt of its utility in the sense which we have assumed as belonging to the word. The particulars in which this part of the invention is claimed to be new are: A hollow cylinder, with an interior diameter nearly equal to that of the wheel; another cylinder, which is solid (except the cavity for the shaft to run in), and concentric with the first. These cylinders are placed between the tire wheels, and serve to

give the water a circular or whirling motion by passing between them before striking the wheels. Connected with these cylinders, and essential to them, is the manner of supporting them, which is simply by inclosing their ends in plank rims attached to the frame work of the forebay. The utility of these cylinders consists in the whirling or vortical motion which they give to the water before it reaches the wheels. This motion is in the direction in which the wheel moves, and causes the particles of water, as they pass out at the issue, to act at a greater angle against the inner sides of the buckets. Every wheel propelled by the action of water upon the inclined surfaces of buckets placed around its circumference, with issues for the water to pass freely out, may be said to act by percussion, for the particles of water, being urged by the pressure of those behind, in endeavoring to escape in every direction outwardly, act upon the inclined surfaces just as the force of the water is exerted upon the lee board of a boat crossing the stream by the force of the current. Now, it is clear that if, by any means, a direction be given to the current which shall coincide with that of the boat before it strikes the board, it will serve to propel the boat faster. This is just the effect of the cylinder in question, though it is by no means clear that the inner one is essential to produce the result. The next particular of the interior claimed by the complainant is 'the spouts which conduct the water into the wheels from the penstock, and their spiral termination between the cylinders.' This part of the invention is also both new and useful. The novelty of these spouts consists of their spiral termination. Their utility consists in conveying the water more easily and with less friction to the inside of the wheels, where it can act at once upon the buckets. These particulars have reference, in every case, to the arrangement of several wheels upon a horizontal shaft. Similar particulars are claimed by the complainant in the invention, as applied to the single horizontal (shaft) wheel upon a vertical shaft, and to these particulars the foregoing observations will apply in the same way. Another part of the invention claimed by the complainant is a contrivance for applying the principle of vortical or circular motion of the water to reaction wheels now in use. This contrivance is both new and useful, in the sense in which those above described are so. Its utility consists in giving to the water a circular motion as it enters the wheel to act upon the buckets or issues.

["The next question proposed by the court is 'whether the complainant's patent is valid.' There is nothing in the evidence which goes to show its invalidity. If, then, it is invalid, it must appear upon the face of the patent itself. The two principal considerations to be applied to this question are, whether the invention is one of a nature to entitle the inventor to a patent therefor, and whether the provisions of the law are complied with in the manner of making the specifications.

["And, first, the invention is one which consists mainly of three parts: (1) A contrivance for applying the water more advantageously to the buckets of the wheel, by giving it a whirling motion. (2) A combination of wheels upon one shaft for the purpose of increasing power and avoiding friction. (3) An improvement in the reaction wheel, by making the buckets as thin at both ends as they can be safely made, and the rim no wider than sufficient to cover them. Under section 6, Act Cong. July 4, 1836, the first part of this invention may very properly be denominated a 'new and useful machine,' being a contrivance consisting of cylinders and their supports, with the spiral spouts between. It can be described, made, and sold, and each and every part, whether separate or combined, may be made the subject of exclusive right, and is therefore clearly entitled to a patent. The second part of the invention may properly be called an improvement on a machine, by means of a new combination of things which were before in use and well known. It is true the inventor entitles it 'the compound vertical percussion and reaction wheel,' but this title is evidently applied to the combination, since the several parts consisting of the shaft and wheels were well known before. See opinion of Story, J., in Moody v. Fiske [Case No. 9,745]. This part of the invention has, therefore, nothing in its nature which destroys the right of the inventor to a patent. The third part of the invention is the 'improvement in the reaction wheel, by making the buckets as thin at both ends as they can safely be made, and the rim no wider than sufficient to cover them.' This part of the invention claimed by the complainant does not seem to be of a character to entitle the inventor to a patent. It is called an improvement, but it contains nothing which sufficiently differs from the old wheel to make in any sense a new machine of it. It consists merely of a slight variation or change in the form or proportions of a wheel long in use, without in any way changing the mode by which the water acts upon the wheel, nor the effect of such action. See opinion of Washington, J., in Gray v. James [Case No. 5,718]. This wheel, then, claimed by the complainant, must be considered as substantially the same wheel as the one before in use, and therefore not entitled to a patent.

["Secondly. Is the invention so described in the specifications as to correspond with the statutory requirements, that it shall be 'in such clear, full, and exact terms, avoiding unnecessary prolixity, as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connect-

ed, to make, construct, compound, and use the same?' It would be difficult to imagine a description more clear and distinct than that given of the complainant's invention in the specification of his patent. The patent cannot be objected to on this account. The only point of doubt, then, as to the validity of the patent, is, whether that part of the invention said to consist in 'the improvement of the reaction wheel,' not being entitled to a patent, is sufficient to invalidate the whole. See remarks of Story, J., in Moody v. Fiske [supra]. Now, the alleged improvement in the water wheel consists of a simple change of form of the buckets and the proportions of the rim. This change, though slight, and not involving a sufficient difference from the old wheel to form a new machine in any sense, and therefore not entitled to a patent, is nevertheless, so far as there is any alteration, the invention of the complainant, so that he does not claim anything that he has not invented, though a part of that invention would not be entitled to a patent. The said commissioner is therefore of opinion that the patent, in this respect, is valid, though this opinion is expressed with hesitation.

["The third question of the court is, 'whether the invention claimed by the defendant, or the water wheel made, vended, or used by him, is an infringement of the complainant's rights under his patents, and, if so, wherein?' The improvements claimed by the defendant, in the summing up of his specifications, are 'the peculiar form of the buckets, and the double spiral scroll placed between them.' The specification itself, however, describes the wheels as placed in pairs on a horizontal shaft, and the scroll as being placed in a 'concave,' resembling an ogee. The spiral scroll, the combination of the wheels, and the 'concave,' are all of them undoubtedly infringements on the rights of the complainant, under his patent, the two first items being precisely the same as those described in the patent of the complainant, and the 'concave' being nothing less than the 'outer cylinder' of the complainant, and which principally acts in producing the vortical or whirling motion of the water.

["The fourth question of the court is 'the amount of damage sustained by the complainant by reason of the infringement of his rights under said patent by defendant.' The only evidence touching the number of wheels made and put in operation by defendant is that of S. R. Chandler and of Martin Chandler, Jr. The former says that he knows of defendant building a mill on a fork of Salt creek, in Muskingum county, and others in the neighborhood; that he has seen the wheels used by Hatfield, and that they are identical with his own (one of complainant's), except that his was made of iron, and those put in by defendant of wood. The latter says he never saw but three of defendant's wheels in operation, and he thinks there is no material difference between those and the complainant's. It would seem, then, that no more than three wheels have been proved to have been put into operation by the defendant, the damages for which, at the price demanded by the complainant for each right, would amount to $75. In the month of July, 1844, at the request of the complainant, the undersigned notified the parties that he would attend at the house of complainant for the purpose of witnessing a series of experiments having reference to this cause. Owing to the alleged illness of the defendant, he did not attend at the time appointed, and afterward protested against the experiments made in his absence being used in evidence. In the month of May last, after due notice to both parties, the experiments were repeated, defendant being still absent. After a full investigation of the matter, the undersigned became satisfied that the experiments, of which the object was to test the relative merits of the complainant's invention, had no bearing upon the question at issue between the parties, and therefore no notice was taken of them in the investigation of the subject."

[The defendant, through his counsel, excepted to said report for the following causes: (1) Due effect was not given to the testimony of Isaac Dillon, which showed that so much of Parker's invention as relates to the placing two or more wheels on one horizontal shaft was not new. (2) The commissioner had misapprehended the law in relation to the validity of a patent for a machine merely useless and not mischievous. (3) The report erred in not holding the patent void, for the reason that it embraced various distinct inventions and improvements. (4) The report was erroneous in not holding the patent void, for the reason that the specification embraced a matter which was admitted in the report not to be the subject of a patent. (5) The report was erroneous in its mode of estimating the plaintiff's damages. (6) The report is erroneous in not setting forth the experiments or their results, and in not taking notice of them in the report.][2]

Mr. Ewing, for complainant.
Mr. Goddard, for defendant.

OPINION OF THE COURT. The complainant filed his bill against the defendant, to restrain him from infringing his patent right. The complainant, in connection with his brother, now deceased, claims the invention of a new and useful improvement in the application of hydraulic power, by methods of combining percussion with re-action, applied and exemplified in the forms of machinery which they mention. The defendant, in his answer, denied the infringement, and also the right of the plaintiff as stated in his bill. At the hearing it was proved by two witnesses, introduced by the complainant, that the water wheel used by the defendant was the same in principle, as that claimed by the plaintiff.

2 [From 1 Fish. Pat. Rep. 94.]

And one of the witnesses says that he heard the defendant say, he expected to pay Parker for his improvement.

Several of the witnesses called by the defendant, say, that the improvement claimed by the plaintiff was of no value. That the power is derived merely from the weight of the water, and that there is nothing new in the invention. Under this conflict of the testimony, the court referred the matter to C. P. Buckingham, Esquire, who was directed, at the request of either party, to witness such experiments as may be made in relation to the improvements claimed, and that he shall take such further testimony as may be requested, due notice being given. And that he report the result of his experiments and his opinion in relation to the following matters: First—Whether the invention claimed is new or useful; and should he so find, that he state the particulars in which it is new, and wherein consists its utility. Secondly—Whether the complainant's patent is valid; and if not, the reason of its invalidity. It may be proper here to remark that these directions were framed by the counsel, and the impropriety of this one was not noticed by the court, until the report of the master was made. The object was to have a report on all matters connected with the subject, which either party desired. But the validity of the patent, upon its face, was a matter of construction for the court. Thirdly—Whether the invention claimed by the defendant, or the water wheel made, vended or used by him, is an infringement on complainant's rights under his patent; and if so, wherein. Fourthly—The amount of damages, etc.

Under these directions the master reported, "the particulars in which this part of the invention is claimed to be new, are, the position of the shaft (being horizontal) and the number of wheels attached thereto. That its utility consists in the convenience of attaching the shaft directly to the saw without the intervention of gearing; in avoiding friction by placing the wheels in pairs, so that the water shall press equally each way in a direction parallel with the shaft, and in permitting the power of a low head, as applied to the same shaft, to be increased to the utmost extent of the supply of water, by increasing the number of pairs of wheels." "The next particular of the invention claimed, consists of the concentric cylinders, and the manner of supporting them." And he reports that no evidence was adduced to show that this part of the invention was not new, and he says there can be no doubt of its utility. The next particular of the invention claimed is, "the spouts which conduct the water into the wheels from the penstock, and their spiral terminations between the cylinders." And this the master reports is both new and useful. Another part of the invention claimed by the complainant is, a contrivance "for applying the principle of vortical or circular motion of the water to re-action wheels now in use." This, he says, is both new and useful. He reported favorably of the patent, that the defendant had infringed it, and he estimated the damages at $75.

Exceptions were taken to the report, and argued, but no additional testimony was offered. As to the infringement, the master reports, "the improvements claimed by the plaintiff, in the summing up of his specifications are, 'the peculiar form of the buckets, and the double spiral scroll placed between them.' The specification itself, however, describes the wheels as placed in pairs on a horizontal shaft; and the scroll as being placed in a concave resembling an ogee. The spiral scroll, the combination of the wheels and the concave, are all of them, undoubtedly infringements on the rights of the complainant, under his patent." This is the opinion of the master, who is understood to be practically acquainted with machinery, and especially with the kind of machinery involved in this inquiry. And his opinion being formed from actual examination and experiments, it is entitled to great weight. Indeed, there is no evidence in the case which can create any doubt in the mind of the court, as to its entire accuracy.

The novelty of the invention has been called in question by the counsel, and a reference is made to the Dictionary of Arts and Sciences (page 2010), under the head of "Mill"; and to other treatises on mechanics, but, we think, without success. We think the invention of complainant is different in principle from any structure referred to. And we can not doubt, from the evidence and the models exhibited, that by the combination described, a great increase of power is gained over any other machinery before used for a similar purpose. The contrivances show great ingenuity and an intimate acquaintance with hydraulics. From the evidence, and our reflection on the subject, we are impressed with the great value of the invention, with its novelty in combination, and with the high merit of the patentees in bringing into practical operation so great an improvement in hydraulic power. We therefore enjoin the defendant from further making, using or vending re-action water wheels, to be used in the manner of those heretofore made by him, or any other infringing of the exclusive privileges of the complainant, etc., and that within twenty days the defendant pay the costs of this suit, etc.

[For other cases involving this patent, see Cases Nos. 10,738, 10,731, 10,733, 10,740, 10,749, 10,727, 10,725, 10,748, 10,726, 10,737.]